IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CV-288-FL

| | |
|---|---|
| WILBERT HICKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Wilbert Hickman ("plaintiff" or "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 20, 24). Each party filed a memorandum in support of its motion. (D.E. 21, 25). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 2nd 2 July 2013 Minute Entry). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I.   **BACKGROUND**

A.   **Case History**

Plaintiff filed an application for DIB on 11 June 2010 alleging a disability onset date of 25 November 2008. Transcript of Proceedings ("Tr.") 10. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 10. On 27 October

2011, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 23-47. In a written decision dated 23 December 2011, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB. Tr. 10-18. Plaintiff timely requested review by the Appeals Council. Tr. 152. On 26 October 2012, the Appeals Council admitted additional evidence (Tr. 5, 482-532)[1] and denied the request (Tr. 1-4). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 6 November 2012, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

### B.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. (d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

---

[1] The additional evidence includes copies of records previously submitted (Tr., *e.g.*, 58-21) and duplicate copies of the same document (Tr., *e.g.*, 497-98, 514, 516, 527-32).

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 59 years old on the alleged onset date of disability and 62 years old on the date of the administrative hearing. *See* Tr. 17 ¶ 7. Plaintiff has a high school education. Tr. 17 ¶ 8; 27. His past relevant work was as a corrections officer. Tr. 17 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 12 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations: residuals from a rotator cuff injury. Tr. 12 ¶ 3. At step three, the ALJ found that plaintiff's impairment did not meet or medically equal any of the listings. Tr. 14 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of medium work:[2]

> The claimant can lift and carry up to 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and walk for at least 6 hours each during a typical eight-hour workday. He can occasionally climb ladders and crawl. He can only occasionally reach overhead with his left upper extremity. His use of the right arm and hand is unlimited. He should avoid concentrated exposure to workplace hazards such as unprotected heights or moving or dangerous machinery.

Tr. 14 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work. Tr. 17 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of laundry

---

[2] *See* 20 C.F.R. § 404.1567(c) (defining medium work as work involving lifting, carrying, pushing, or pulling up to 50 pounds occasionally and 25 pounds frequently); s*ee also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV.c, def. of "Medium Work," http://www.oalj.dol.gov/libdot.htm (last visited 30 Jan. 2014). "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

worker, hospital cleaner, and store laborer. Tr. 17-18 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 18 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2 (holding that Commissioner's

decision implicitly determining claimant not to have a severe mental impairment and failing to consider the effect of any such impairment on his ability to work was not supported by substantial evidence in light of additional evidence of claimant's depression admitted by Appeals Council, and remanding case to Commissioner for further proceedings).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

B.      **Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ erred by failing: to find him disabled under Medical-Vocational Guideline (*i.e.*, Grid Rule) 202.06[3]; to properly weigh the treating physician

---

[3] The Medical–Vocational Guidelines or grids, which are set out in 20 C.F.R. pt. 404, subpt. P, app. 2, are a set of rules that, when applied directly, specify a conclusion as to whether or not a claimant is disabled. *See generally* Medical-Vocational Guideline 200.00(a). They may also be used as a framework for decision making, as discussed below. The Medical-Vocational Guidelines are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills).

opinions; and to find his depression, posttraumatic stress disorder ("PTSD"), cataracts, and glaucoma severe impairments. The court agrees that the ALJ failed to properly evaluate the medical evidence, as well as other evidence, relating to plaintiff's mental impairments, although on grounds somewhat different than those cited by plaintiff. Given the dispositive nature of this issue, the court will address only it and not the other contentions raised by plaintiff.

      C.      **ALJ's Assessment of Medical and Other Evidence regarding Plaintiff's Mental Impairments**

Plaintiff has been diagnosed with PTSD and depression. Tr. 13 ¶ 3. He has been treated for these impairments at Greenville Psychiatric Associates, PA ("Greenville Psychiatric") and by psychologist William J. Albrecht, Jr., Ph.D. of the Carolina Centre since March 2011. Tr. 13 ¶ 3. Plaintiff testified about his symptoms at the hearing, as did a cousin of his. *See* Tr. 15 ¶ 5. The ALJ found plaintiff's PTSD and depression to be medically determinable impairments. Tr. 13 ¶ 3. She nevertheless determined at step two of the sequential analysis that they constitute non-severe impairments and included no mental limitations in plaintiff's RFC. Tr. 13 ¶ 3; 14 ¶ 5. She stated in relevant part:

> The Administrative Law Judge finds that the claimant's medically determinable mental impairments of PTSD and depression, which are of recent onset, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore, non-severe.

Tr. 13 ¶ 3. After careful consideration, the court cannot conclude that these and other determinations by the ALJ regarding plaintiff's mental impairments are supported by substantial evidence or conform to the applicable legal standards.

Among other reasons are deficiencies by the ALJ in her explanation for not according plaintiff's mental impairments more weight. A portion of the explanation appears in the ALJ's step two analysis. There she states:

7

> The claimant has also been diagnosed with a major depressive disorder and with [PTSD]. He has been followed for these conditions by William [J.] Albrecht, [Jr.,] Ph.D. of The Carolina Centre and at Greenville Psychiatric Associates since March, 2011. The claimant's intake mental status examination was generally within normal limits with normal speech, normal psychomotor activity, and with no evidence of a thought disorder. His global assessment of function (GAF)[4] was rated at 55 indicating no severe impairment of function. His subsequent treatment records have revealed that he has improved with treatment and has not developed any significant mental status abnormalities. He does not require any psychiatric medication (Exhibits 13F, 15F-16F, and 18F).

Tr. 13 ¶ 3. Applying the "paragraph B" criteria, the ALJ further found that plaintiff had no limitations in activities of daily living and social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. 14 ¶ 3. While this analysis appears at step two of the sequential analysis, it is the ALJ's principal analysis of plaintiff's mental impairments, and she clearly relied on it in the remainder of her decision, as substantiated by her omission of any mental limitations from plaintiff's RFC.

The most glaring error in the ALJ's explanation is that, contrary to her express finding that plaintiff did not require psychiatric medication, he did. Records before the ALJ showed that plaintiff was prescribed the antidepressants Prozac and/or Wellbutrin from August to October 2011. Specifically, a psychiatric evaluation from Greenville Psychiatry dated 30 August 2011 (Tr. 477) listed Wellbutrin as a medication for plaintiff; and notes on plaintiff's visits there on 6 September 2011 (Tr. 475) and 11 October 2011 (Tr. 474) listed Prozac, to be taken daily (*i.e.*, "Qday"). In Dr. Albrecht's records, the note on plaintiff's visit on 13 September 2011 (Tr. 459) listed Prozac as a medication for plaintiff; the note on his visit on 27 September 2011 (Tr. 461) listed both Wellbutrin and Prozac; and the note on his visit on 13 October 2011 (Tr. 461) listed Prozac. The records submitted by plaintiff for the first time to the Appeals Council show that he

---

[4] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM–IV–TR").

continued to be prescribed daily Prozac through the date of the ALJ's decision, 23 December 2011, which marks the end of the alleged period of disability, and then afterwards until at least July 2012. Tr. 486-88, 492-95, 504-13, 515, 517. Although not relating directly to the period of disability, the evidence of plaintiff's medication after the ALJ's decision appears to have at least some relevance to plaintiff's condition during the claimed disability period given the short time involved and the continuity of the underlying impairments.

The Regulations require an ALJ to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate [his] main or other symptoms" in evaluating a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see also* Soc. Sec. R. 96-7p, 1996 WL 374186, at *3, 7-8 (2 July 1996). The ALJ must consider the same evidence in determining a claimant's RFC. *See* Soc. Sec. R. 96-8p, 1996 WL 374184, at *5 (2 July 1996) (noting requirement that the RFC be based on, *e.g.*, "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)"). Having failed to recognize that plaintiff received medication for his mental impairments, the ALJ also failed to address and, the court finds, to consider these issues relating to plaintiff's mental impairment medication, as required. The ALJ's failure to consider the fact that plaintiff received medication for his mental impairments and the related evidence represents a violation of her fundamental duty to consider all the relevant evidence in the case. *See, e.g.*, 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); Soc. Sec. R. 96-8p, 1996 WL 374184, at *5 ("The RFC assessment must be based on all of the relevant evidence in the case record . . . .").

While the ALJ's errors regarding plaintiff's medication for his mental impairments alone dictate the relief provided for herein, the court notes its concern over the ALJ's finding that plaintiff's GAF score of 55 "indicate[d] no severe impairment of function." Tr. 13 ¶ 3. By this finding, the ALJ is relying on a GAF score as one of a handful of reasons underlying her analysis of plaintiff's mental impairments. This is problematic because "the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue*, No. 08-cv-3140-JKS, 2009 WL 5030706, at \*2 (D. Md. 15 Dec. 2009) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746–01, 50764–65 (21 Aug. 2000) (explaining that while a GAF score constitutes a type of additional information from a medical source about an individual's functional abilities and limitations, the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings")).

Moreover, the ALJ interprets the GAF score of 55 as affirmatively showing that plaintiffs' mental impairments are non-severe. "[A]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1521(a). A GAF score of 55 indicates moderate symptoms or moderate difficulty in social or occupational functioning. DSM-IV-TSR 34. In contrast, a GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social or occupational functioning. *Id.* Thus, standing by itself, without consideration of other evidence, the score of 55 at least suggests that an impairment is severe. *See, e.g.*, *Gonzalez v.*

*Colvin*, No. 8:12–CV–674–T–TGW, 2013 WL 2285101, at *5 (M.D. Fla. 23 May 2013) (holding that a GAF of 55 "reflects a moderate mental limitation and would indicate a severe mental impairment"); *Bennett v. Barnhart*, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) (holding that a GAF score of 55 to 60 suggests that a mental impairment is severe in nature). It therefore appears that the ALJ may have misapprehended the GAF score of 55.

After her step two analysis, the ALJ's only additional discussion of the medical evidence regarding plaintiff's mental impairments consists of her explanation of the weight she accorded a medical source statement by Dr. Albrecht. She stated:

> Dr. Albrecht provided a treating source statement dated August 9, 2011 indicating that the claimant's mental symptoms would impair his ability to return to work (Exhibit 13F). This assessment is inconsistent with the source's own treatment records and is also contradicted by other evidence in the record. Therefore, the [ALJ] gives little weight to this opinion.

Tr. 16 ¶ 5.

The ALJ's failure to recognize that plaintiff was prescribed medication for his mental impairments draws into question these findings. More specifically, plaintiff's need for medication as shown in Dr. Albrecht's records appears to be consistent with his opinion and arguably undermines the ALJ's finding that the opinion is inconsistent with his own records. Also, the ALJ's possible misapprehension of the GAF score of 55 could have affected the degree to which the ALJ deemed Dr. Albrecht's opinion inconsistent with this and possibly additional "other evidence in the record." Tr. 16 ¶ 5. The considerable weight treating physician opinions can be due absent inconsistencies of the type the ALJ cited arguably enhances the impact of the potential deficiencies in the ALJ's evaluation of Dr. Albrecht's 9 August 2011 medical source statement. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *see also Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 Jul. 1996).

11
Case 4:12-cv-00288-FL   Document 27   Filed 01/31/14   Page 11 of 16

The various flaws in the ALJ's analysis take on particular significance when viewed against the backdrop of evidence beyond that already discussed tending to show that plaintiff's mental impairments and the resulting limitations are more serious than the ALJ found. Indeed, this evidence dispels any notion that the ALJ's errors could not have affected the outcome and are harmless. *See Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7, 7 (M.D.N.C. 14 Aug. 2013).

Such evidence includes plaintiff's testimony. As summarized by the ALJ, plaintiff testified in relevant part as follows:

> He also suffers from depression and has nightmares. He is hyper and can't sleep. He will pace around the house. He is irritable and doesn't trust people. He is on guard all the time. He is worried that something bad is going to happen. He likes to be alone and doesn't like to go out in public. He also has memory problems and forgets things. He loses focus. He does not have motivation and likes to sleep and not be bothered. He had to shoot someone when he was a corrections officer and he has nightmares regarding this.

Tr. 15 ¶ 5. While the ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [his RFC]," the errors by the ALJ draw into question the validity of this determination. Particularly pertinent, of course, is her failure to consider plaintiff's need for medication for his mental impairments in evaluating his symptoms.

Other evidence includes the testimony of plaintiff's cousin. As summarized by the ALJ, she testified:

> Alvin Malloy, the claimant's cousin, testified that he sees the claimant twice a week. He said that the claimant used to keep himself neat but now he wants to stay home in his pajamas. If he comes out of the house, he gets all excited. He engages in very little conversation and rarely makes eye contact. He holds his head down. He does not keep himself dressed the way he did and his hygiene is not good now. He said that the claimant does not want to be around people

>because it makes him nervous. The claimant is always on guard and ready to fight. He also has some memory loss and sometimes is not focused. He doesn't get along with his wife.

Tr. 15 ¶ 5. The ALJ made no finding addressing the credibility of this testimony specifically, although he obviously gave it little weight.

Moreover, the amount of psychotherapy plaintiff received was substantial. The records before the ALJ showed that he had 20 psychotherapy sessions with Dr. Albrecht over the approximately 7-month period between March and October 2011 (Tr. 444-50, 458-59, 461), and 3 visits to Greenville Psychiatry (Tr. 474-79). The additional evidence plaintiff submitted to the Appeals Council shows that he saw Dr. Albrecht 17 more times in the approximately 10-month period between November 2011 and August 2012, and Greenville Psychiatry 5 more times (Tr. 487, 488, 511-13). The evidence of plaintiff's psychotherapy over at least the early portion of the period after the ALJ's decision on 23 December 2011 has some relevance to plaintiff's condition during the claimed disability period in light of the short time involved and the continuity of the underlying impairments.

Further, Dr. Albrecht's medical source statement of 9 August 2011 included the opinion that working would likely aggravate plaintiff's symptoms. He stated in relevant part:

>While his symptoms are improving, he continues to experience recurrent negative thoughts, depression, anxiety, hypervigilance, sleep disturbance/distressing dreams and avoidant behavior.

>Given his current psychological state any additional external stressors such as a work milieu would likely exacerbate his current symptoms. Hence it is my opinion that the above stated issues would likely impair Mr. Hickman's ability to return to substantial work-related employment.

Tr. 443. This opinion thus suggests that plaintiff's ability to adapt to a work environment may be more limited than might otherwise appear from Dr. Albrecht's office visit notes, which are based on his condition when not working. *See Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir.

13
Case 4:12-cv-00288-FL   Document 27   Filed 01/31/14   Page 13 of 16

2000) ("For a person, such as [plaintiff], who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic."). The ALJ did not address this opinion specifically.

Moreover, in a medical source statement dated 31 January 2012 included in the additional evidence plaintiff submitted to the Appeals Council, Dr. Albrecht continued to express the opinion that work would exacerbate plaintiff's symptoms and that his ability to work was impaired:

> Per my original letter dated August 9, 2011, I maintain my position that Mr. Hickman is not able to return to gainful employment secondary to significant emotional disregulation that is Major Depression and Post Traumatic Stress Disorder. While he has improved psychologically over the course of treatment, he continues to experience significant depression, avoidant behavior, distressing dreams/nightmares, negative and sometimes aggressive thoughts and emotional volatility if stressed. Placing Mr. Hickman in any job that he perceives as stressful and threatening could result in a significant exacerbation of his current psychological symptoms.
>
> Once again, while he has improved psychologically over the past year he continues to experience significant psychological issues which could be easily exacerbated by *perceived* extreme job stressors. It is my opinion that his chronic major depression and PTSD will likely impair his ability to return to and maintain a job.

Tr. 234. Thus, even after the sixth months of additional treatment since Dr. Albrecht's initial medical source statement, he continued to believe plaintiff's mental impairments limited his ability to work. While this second medical source statement came after the ALJ's decision, it followed the decision by only a month and is clearly relevant to the period of claimed disability before the ALJ. The Appeals Council made no findings regarding this medical source statement specifically, noting simply that the additional medical evidence and argument submitted "does not provide a basis for changing the [ALJ's] decision." Tr. 1-2.

14

Case 4:12-cv-00288-FL   Document 27   Filed 01/31/14   Page 14 of 16

In light of this and the other evidence tending to substantiate the severity of plaintiff's mental impairments and the ALJ's errors in her analysis of these impairments, the court cannot say that the ALJ's determinations regarding the mental impairments, including specifically the determinations that these impairments are non-severe and do not warrant any mental limitations in plaintiff's RFC, are supported by substantial evidence and based on the proper legal standards. This case must accordingly be remanded.

In making this ruling, the court expresses no opinion on the weight to be accorded the evidence on plaintiff's mental impairments. That is a matter left for determination by the Commissioner.

### III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 20) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 24) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 13 February 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after the objections are filed.

This, the 30th day of January 2014.

_____
James E. Gates
United States Magistrate Judge